Mr. Chief Judge, may it please the Court, Mountain Valley Pipeline is in my client's property. There is no bond posted. The Court did not hear our evidence below and we are damaged and are being damaged as we go. We have pictures of where they dug up the coal and how the pipeline is in the coal. Your client owns the mineral rights underneath the surface, right? My client owns a great deal of property but with respect to these minerals, specifically the coal and the other minerals. The surface is owned by another party. We don't see that a lot in North Carolina, at least not in eastern North Carolina, because there is not a whole lot of mineral rights, I guess. So you have a client that has the underneath rights to these minerals and the big issue in this case deals with, I guess the District Court Judge sort of looked at the surfaces. This is only dealing with the impacts. He should have looked at your rights too. Yes, Your Honor. In fact, it has impacted and it is continuing to impact. We ask that the Court look at that, let us put on our case, show what the impacts of the pipeline would be, have them bring in the owners, the mineral owners, who would be impacted and have them post a bond. Now my client's Fifth Amendment rights have been violated. So all you want to do is go back and have a hearing. There is no specific relief other than you just want to be heard with this evidence. We ask that the motion, that the summary judgment be overturned. It wasn't right because the proper parties weren't there. So the summary judgment motion granting the injunction was and the injunction itself was improper. So the answer is yes. Just set aside the summary judgment and say go back and hear your side of the story with the evidence. That is what you want, right? Yes, that is what I want. And that is what is just here. Now their response was, well we are not taking the coal. But they dug it up and they put their pipeline in it. Well that is a factual thing, but I guess you are saying there is an issue of fact here as to whether they did or not and the evidence support that. Yes, the evidence, even pictures now, support that. And that is the evidence we proffered before the injunction hearing, both by affidavit and in argument. But the court said, well that evidence, because they didn't say they were taking it. And it is not only this district court that says that. That is what universally the case law is. That the mountain valley pipeline gets to. Not exactly, your honor. What is your best case? The fourth circuit has a case and it is United States point 21.54 acres of land. And in that case, the government wanted to condemn to the high water mark and they said, well it is here. But the property owner said, no, your high water mark is going to take more of my property. They had a trial below, went to the fourth circuit. The fourth circuit reversed and said, no, when there is a dispute about like this about the tank, then it should be heard. Well that sounds like a dispute about where the water mark was. There is no dispute that there is coal here and they said they are not taking the coal. Similarly, the question is where is the pipeline going to be? I would also point out that the mountain valley's argument is, well so what? Sue us. Okay, yes, even if we get this wrong, sue us. There is a problem with that. Are we going to be able to eject their pipeline? Will the court say, take this 42 inch pipeline out of our property. That is our legal right as the owner of the property. No, but then they will have to assess, I am sure you would argue, what is the actual scope of the taking. They have, as Judge Thacker says, they have a decision as to what they are going to take, but then it becomes sometimes a legal question as what is the effect of what you designate you took. Wouldn't that be a question that would be litigated as to whether or not in fact you are right, because you will not be able to extract a pipeline. But if that location has an impact on your mineral rights or anyone else's, wouldn't that have to expand the taking, whether they call it a taking or not? The law says that they have to post a bond, our constitutional rights. SAGE says before you ever issue an injunction, you should weigh the equities. What is going to happen here? And we didn't get that opportunity. So the injunction was invalid. There is a bond, isn't there? Not for this property, no. There is absolutely no bond. They would not let us put on this evidence. What do you mean in your reply brief when you say the bond is inadequate? Well, there is bond for other property, but it does not include the property where they are damaging and will damage the coal because they said we are not taking the coal. But they are taking the coal. They are digging it up as we speak. So we would ask that the injunction be dissolved so that that damage stops  You are saying they are digging it up now, the coal. Were they digging it up when the district court heard your argument? No, because they did not have an injunction. That is what we wanted to present. If you give them an injunction and let them in early, this is what they are going to do to our client. A bond should be posted and the taking should be reviewed. But we were not permitted to present that evidence. We were excluded pre-hearing. It is very clear. I am not going to hear evidence. The law is they get to define the take. But that is not exactly the law as in the case of 21.54 acres. I just want to be clear about this to make sure. The surface area of land involved, you do have a bond to cover as to what is the prospective value of that taking, correct? That is correct. Now, are they extracting coal? I am just saying for the sake of argument that they are doing what you said at this point. Are they extracting coal beyond that area, the surface area that has been bonded? Yes, Your Honor, and extensively. Are they slant digging then? Well, some of the coal is in the surface. There are surface mining methods. Some of the coal is not very far and below the surface and they are digging right through it. So what you are saying is that mineral rights could be surface rights too? Well, actually, there is a great deal of law about that and mineral rights and surface rights share. And the coal owner generally has the right to extract the mineral. See, the way this thing looks to me, you have got surface, you have got mineral. Well, you could have a piece of property over here that could also be impacted or you could have problems. What you bring is an action. If they went over here on this property, you would bring that action that you are talking about, a trespass or maybe some type of inverse condemnation type action. Yes. And I think when the trial judge is looking at it, he is looking at the same thing. He says, hey, this is like being over here. All they are doing is here. If they hit you down here or something happens here, you can bring trespass, inverse condemnation, all kinds of other stuff here to get your rights here. But you are saying, let me make sure I understand your question now, your proposition. You are saying coal may be here, but it also might be up here. And they are going to hit it anyway. And you wanted to put, is that the evidence you wanted the trial judge to hear, which then, in my view, if they hit the surface, then you are kind of like a coal owner. Is that your argument? Well, we are the coal owner. I mean, coal owner insulifies a surface property. Yes. We have the right to use the surface. We have the right to dig it up to mine the coal. The surface owner takes subject to the coal owner's rights. But actually what I'm saying here is where they condemned, that's not the problem, because that's not where the coal was. We owned a surface track over here. That's what they condemned. Where they did not condemn, where they are damaging without any authority whatsoever, is this property over here. And we said, judge, when they lay that. That's trespassing. That is. They'd bring an action. Well, there's a problem with bringing an action, and the chief judge just said it. And if you look at 21.54 acres of land, you'll see that the Fourth Circuit considered a similar problem. The problem is when I get to bring that action, I will not have all the remedies that the law provides. A court is simply not going to say, all right, pick up your pipeline and move it someplace else. The court is later going to let them condemn us. So now what happened? The entire process has been frustrated. They didn't post a bond. They didn't pay what they needed to pay for the damage. But later, they're going to condemn. Oh, that's when we'll post the bond. That's when we'll apply what the Fifth Amendment to the Constitution. That's when your rights will be honored. So what are you asking us to do? I'm asking you to dissolve the injunction and remand and permit us to present this evidence, which now will include evidence that shows what our engineers and our geologists would have said and what was filed in the affidavit pre-hearing was correct. Here is where it is. Here are the pictures. Here's the coal. Here's their pipeline in it. They owe us damages for digging the coal without any authority. They should post a bond before they go forward so that SAGE and our ---- Wouldn't you do all that in a trespassing action? Does Judge Wynn ---- Yes, certainly I would and ask for punitive damages as well. But the problem with the trespass is going to be they will condemn in response to that trespass. So the proper result here should have been that they post the bond, that the court hear both sides. There was such a rush in the courts below because it is a big project. There was a certificate of need. Isn't it the venue of the district court trespassing and the other action to determine the appropriate remedy? If we follow the district court here, the district court was focusing on the issue it considered before it, and that is the scope of the taking. And if the scope of the taking is separated from this, then you have this separate action. A remedy has to be fashioned. The district court at that time determines what that appropriate remedy is. Certainly that's true, but as I've said, my rights have been prejudiced. My constitutional rights have been prejudiced. There may be a remedy that the district court appropriately would determine how you will be limited for. But the practicalities are that my remedies are already limited because the pipeline is already there. Our client would like them to remove the pipeline. But your client is in the business of making money. That's true. And money will remedy. It's just a question of how much. You don't, you'll leave the coal right in the ground if you give you enough money. I don't mean that facetiously, but that's really, I don't understand this whole pipeline is there. You're not interested in the beauty of the land or the fact this pipeline is doing something to your property. You just want to make money, and you're telling me the remedy that the district court would give you from a trespass action would not be sufficient because it can't give you enough money? Because they can't give me ejectment because the condemnation will be filed in response. That will limit my punitive damages, and that restricts my legal rights. Not only was my constitutional right to have a bond posted before taking and to have a fair hearing. Does the district court have to allow them to proceed with condemnation if you say you are trespassing on my land? Then can a district court then fashion remedy there and says, well, you may go ahead and file your condemnation, but this action is already here before you condemn this land, and I'm going to give you this remedy? Well, certainly I could move to have the judge reconsider. There's lots of remedies. The appropriate remedy for an injunction, in our view, is to appeal to come to this court to ask for justice, which is what we've done. Okay, thank you. And yes, Your Honor, my client is very much interested in mining. I know so. Thank you, Mr. Patterson. Ms. Bagnell. May it please the court, my name is Nicole Bagnell, and I represent Mountain Valley Pipeline in this case. Before getting to the merits of the argument, I think it's important that we start by looking at exactly what is at issue in this case and what is not before the court. Cut to the chase of what's here, and that is, why wouldn't a district court just let them put on their evidence? During a summary judgment proceeding in which he has evidence he says that will say, they've got coal on the surface that's going to be impacted. You've got property that's not even condemned that's going to be impacted here. So why would you foreclose that with a simplistic statement that, well, this is surface, that's all the scope it is, and this is metal on the ground? Well, Your Honor, I think it's important to understand what was at issue in the case that Judge Copenhaver was looking at. MVP condemned three parcels owned by Western Pocahontas. One for an access road, so no digging, and two for a pipeline on the surface. What Mr. Patterson is talking about and what he admitted is 65 other parcels that were not condemned in any way. On those 65 parcels, MVP negotiated with the surface owners and obtained a pipeline right-of-way. And so that was not before Judge Copenhaver at all. Judge Copenhaver did allow evidence as to what the three parcels that were condemned. And in fact, WPP did not present any evidence as to those three parcels. The evidence they wanted to present was as to these 65 other parcels that were not before the court. And in that respect, United States versus 21.54 acres from this court is directly on point. It says that this court can only look at what MVP has chosen to condemn. Now the point about the high watermark, that was for a property that was condemned. And it went to what damages were available. For the three parcels that were condemned in this action, WPP might have damages claims that it will present at the trial on just compensation. But we didn't hear just compensation. And that is still left to be heard. And they can raise those damages. If they have evidence, I don't know whether they do because obviously that wasn't before the district court. But if at just compensation, they have evidence that their coal was impacted, they'll be compensated for that. There's a remedy. But for those 65 other tracts that are not before this court and were not before the district court, their remedy, if they need one, these damages are speculative. I would argue if such a case were actually filed, they can file an inverse condemnation claim. Or they could file a trespass action, whichever the court deems is proper. Are you going to dig on those 65 parcels, some or all of them? Your Honor, I can't say yes. We're building the pipeline. I'm not sure. Some of them might only have access roads. Those 65 weren't before the court. And so I don't know the specifics of every single one. So you don't even know whether you're going to eventually dig or not? I believe that there will be a pipeline on the majority of those. So there will be surface digging to about 10 feet in general was the evidence. Will that strike coal on those diggings? Do we know? I don't know, Your Honor. It will definitely not come in contact with deep coal, which is the valuable coal. There might be some outcroppings. Then all these other 65, I call it, but people don't speak Latin much anymore in law, but then the rest just die of it. It's not the actual thing, but it's the thing that's happening that's impacted by what's going on, is it not? It really isn't in the context of a condemnation, Your Honor. Condemnation actions are very limited. There is a specific statement required in the complaint of exactly what is being taken. We're not talking about other rights on the same property. We're talking about 65 other properties. They weren't identified in the complaint by owner, by track number, by map, or by description. Did you negotiate with the surface owners of those 65 tracks? Yes, we did, Your Honor. Why didn't you negotiate on the mineral rights? Because we do not believe that the mineral rights will be impacted. The mineral rights are the deep coal rights. Is that a factual determination as to whether you believe it? I mean, could there be evidence that would support the fact that they would be impacted? There could be evidence, Your Honor, and it could be brought in an inverse condemnation action. But in terms of deciding— I'm talking about in this type of a taking. You've negotiated with, and the scope here is you've negotiated with these 65 tracks on the surface, but you also have, you know that there are mineral rights that are on there, too. And it just seems like, just in fairness, I mean, typically if you've got different owners of property and stuff, you negotiate with both. Well, Your Honor, that determination is made based on what MVP is taking, and we are not taking the mineral rights. And so it was determined that those rights were not necessary. And we're limited in what we can take under the Natural Gas Act.  Necessary rights. Doesn't the Natural Gas Act require you to negotiate? Yes, it does, for the rights that are being taken. And none of these rights have been condemned. But there's still a remedy. The point is there's still a remedy. But we don't know that. It's a factual determination. They say they have evidence of this, and this is summary judgment. The summary judgment is as to the three parcels that were condemned, Your Honor, and it was properly entered. There's three factors for summary judgment in a condemnation. The first is that MVP had a valid FERC certificate. The district court looked at that. WPP did not claim that it didn't. It found that there was a valid FERC certificate. The next element is that the route of the pipeline is necessary. Again, WPP did not dispute that. The only element for summary judgment that they disputed was whether or not an offer had been made. And they didn't dispute that. And actually the element that has to be proven is that MVP was unable to acquire the rights through negotiation. And they presented evidence that an offer had been made to the district court. WPP does not contest that an offer was made for the parcels that were condemned. They contest that the offer wasn't sufficient because it didn't cover all these other claimed damages. But that is not the test. And there's no requirement. I think they put this in the context of the offer has to be in good faith. There's no requirement in this district, in this circuit, that the offer be in good faith. But it was because the offer was made for what MVP believes it is taking and what it ultimately condemned. Can you do a partial take into a piece of real estate? I used to do real estate quite a bit. You can do a partial take and you can take the surface but not the mineral rights? Yes, Your Honor. And for this purpose, when you know you're going to go through with a pipeline on the surface of it, you can take it and then just say, well, the mineral rights aren't being asserted without even hearing from those with mineral rights? You can hear from, first, Your Honor, yes. And second, you can hear with those from surface rights, with mineral rights. Why should you? Just not in this context. You hear from them by them filing an action. The law is very clear on what this court could hear. This court could hear what MVP defined as the taking. And if, in fact, other damages are incurred, they can raise that either at just compensation or through a separate action, either an inverse condemnation or a trespass. Well, it seems to me you're saying they're not even a proper party to this action because they are not even involved. So why are they here? Correct, Your Honor. They're here for the three parcels where they own a surface interest. For those other 65 parcels, they're not a party and neither is that property. So they simply should not be heard on those parcels, which is exactly what Judge Copenhaver found. It's also what Judge Keeley found in the Northern District of West Virginia on the exact same case, which they're not appealing. They didn't appeal summary judgment on the same factors for the one parcel in the Northern District where they own a surface right. Well, you brought up the 21.54 acres case. Doesn't that have an exception there? I don't know how it favors you. Explain to me how that favors you. That case says specifically that the con and nor defines what the taking is. But there is an exception. For the parcel that is taken. And we're not here about the parcels that we took. We're here about the parcels that we didn't condemn. On the parcel that was taken, if there's some dispute, they can present evidence at just compensation that we impacted their minerals. Ms. Bagdell. Yes. Is there any impact from the seismic effect from coal digging on the pipeline once it's in place? You know what I mean by that? I believe that I do, Your Honor. And I think what your question is, is if they were to deep mine the coal, would that impact the pipeline? Absolutely. It looks like there's a lot of ground shaking going to happen near your pipeline. And then would you come back and say once it's there and start thinking, as Mr. Patterson said, once it's there, you say, wait a minute, oh, you can't have this kind of activity that's close to it. That's why I say, again, Mount Ladin, the race is just tight. How can you just take these 65, all this, okay, so we're not taking it on just one little strip, but then you're going to have people potentially surface and deep coal mining all around it. Has anybody looked at that impact and then that impact as to how it relates to compensation, which is the bond, which is related? I'm not an engineer, but just common sense, I mean, when you dig in the ground at that level of equipment and extraction of coal, it makes the ground shake. And you have a pipeline there. I'm sure we don't want any of that gas and it ruptures, right? Absolutely. We do not want a rupture, Your Honor. What is that? Has anybody looked at that in terms of how does that relate to the mineral rights and that kind of thing? Yes, Your Honor. That was looked at by MVP in determining what rights it needed. And there was testimony actually at the hearing that deep mining could occur under the pipeline if necessary. But that is really a speculative damage at this point because WPP does not have a permit to mine the coal. It doesn't have any ongoing mining or any impact that might come into conflict with the pipeline. At the time that it does, if there was some impact, its remedy would be to file suit for an inverse condemnation. But that's not the case here. They're not mining under this pipeline. And, in fact, there are many examples in West Virginia and throughout the country where deep mining has occurred under a pipeline with no impact on the pipeline. Pipelines routinely monitor the stress that occurs on it from underground mining. And sometimes they have to make changes to the pipeline. Mr. Cooper testified to this. Sometimes they have to make changes to the pipeline, but sometimes they don't. It depends on the depth of the coal. It depends on the type of mining. It depends on how the pipeline is constructed. But none of that is at issue here. There is no mining under the proposed route of the pipeline by WPP. So, Your Honor, as to the evidence being excluded, it simply wasn't relevant. It wasn't part of the parcels that were before Judge Copenhaver. That finding was not arbitrary or irrational. It was based on what was in the complaint and the law of the Fourth Circuit. And, as I noted before, Judge Copenhaver did allow testimony by WPP or allowed them to submit evidence, if they had any, as to what was condemned. But even if they had... I want to get back to the 2154 acres. I know it's different, dealing with water tables, and the question of whether or not it's 610 or 628. But they could have made this same argument there. They could have said, no, this is only just dealing with the taking of this. And outside of this, if they want to deal with that additional land you claimed that's actually below the 628, you can bring that in an inverse condemnation for trespass. Now, we're both on one project. We've got two projects here. And one project is such that you have the three acres here. The question is, it seems to me, the question in 2154 was, what's being affected here? Is this other property also being affected here such that it, too, is a taking? And that seems to me to be the question here. Is there a taking here that's happening, or is this property being affected with the memo rights because of what you're doing here? And I think the answer to that, Your Honor, is first we have to look at the difference between the parcel, the property being actually condemned, and not. In 21 acres, the property was actually condemned. So then you're limiting the analysis to the three parcels that were actually condemned in this case. But the question still was, in 2154, what property is being affected? Right. And that's what's being here. What's being affected, this is the exception on the 21, and that's what's confusing. I know you guys disagree on this point, but I want you to articulate your position a little bit more on what your position is. Yes, Your Honor. I think the court was clear that the condom nor could define the taking. Except? Except if there was some discrepancy in what was being taken, as to what was affected. Right. So first the court looked at what was being taken, and then they looked at what the condom nor had defined was being taken. And then they looked to see if there was a discrepancy. MVP did not take coal rights. There's no discrepancy as to that. They took the surface rights. They did not, in their complaint, identify any coal rights. They did not identify the right to subjacent support, so to leave the coal in place to protect the pipeline. Is that evidence that could be presented in a summary judgment? No, Your Honor. Because looking at summary judgment, they are looking only at what has been taken. It's limited to that. And that was properly done by Judge Copenhagen. You don't bring evidence in. You don't allow them to say, well, my property is being taken because Judge Gregory, Chief Judge Gregory, just went into his own business about, well, what if you're digging down and it hits over here? I bet you if you're dealing with oil, we'd be dealing with a whole different subject, wouldn't we? It's a different law. That's right, Your Honor. But go ahead. Don't go there. But I think that this is a really important distinction because the evidence they wanted to present was to 65 parcels that weren't before the court. It wasn't the 21 acres case where you looked at the parcel and there was a discrepancy as to the extent on that parcel. And to find the parcels that were before the court, we looked to the complaint. Yes. And the parcels that opposing counsel are talking about, they're not in the complaint. Not at all. For the three parcels that are in the complaint, one has an access road on it, so there's no digging. The other two have a pipeline. And the judge did allow evidence as to the parcels, as to the property in the complaint. WPP didn't submit any evidence. They wanted to submit evidence as to the parcels and the taking that were not in the complaint. And that's the distinction between 21 acres. And if they want to talk about these other 65 parcels, they need to bring an inverse condemnation action or something, some type of pleading or something to put that before the district court. Exactly, Your Honor. But the bottom line is they are not really disputing the scope of your taking. What they're disputing is your description of what you are taking. They, yes, that's right. If the complaint lays out one thing, at least in terms of, well, this is it, you say, well, this is all it is. But you're actually taking more? We're not taking more either, Your Honor, because we're not taking coal rights. We're condemning the surface. We have agreements on these 65 other parcels as to the surface. It just seems like the 2154 exception to me. The 2154 exception may apply depending on their argument for the three parcels that we've taken because that's the scope of the taking, but not as to property where the surface owners have agreed and it's not before the court. And just running short of time, but on a last point on this, I think that it's important to remember in terms of the injunction, but also in terms of the evidence that all of the harm that's claimed by WPP, and I think, Judge Wynn, you made this point at the end of WPP's argument. It's not irreparable harm to WPP. It's all damage to coal, which is compensable if it occurs. We still dispute that it will occur, but if it occurs, it's compensable by money damages. And so the injunction was still proper. And, in fact, in this appeal, WPP does not dispute or does not raise an appeal the amount of the bond or the amount of the deposit that was made into the court. It may be compensable, but Mr. Patterson's argument is that I may still have the bull, but the number of arrows in my quiver have changed in terms of the options I have and what is compensable if, in fact, this turns into inverse condemnation. And he said it ought to be addressed now. That's his point. Yeah, there is compensation, but there's compensation and there's compensation, because what different bins do you have? If you have ten bins and one bin, your other one, you only have two. That's a significant difference in potential compensation, isn't it? I don't believe that it is, Your Honor, for this reason. WPP does not dispute that MVP has a valid FERT certificate, and it doesn't dispute that the route of the pipeline is necessary. And both of those things determine whether or not the pipeline can be installed. In those three inquiries, what is the requirement for a bond fit in those? Which one? It doesn't. It doesn't. It doesn't. I assume that that's part of the calculus in terms of the protection. Because you're right, it's not there. Do you think they could say, well, you can proceed with the tape and don't post a bond at all? Do you think the court could do that, district court could do that? No, because the bond is part of the preliminary relief. Right. Preliminary relief. Right. Relief is the measure of my headache, not yours. Am I right about that? The relief is my headache, not yours. Yes. Well, it's his headache. It's got coal on his mind. He does. And that coal is compensable with monetary damages. And that could be either determined. He could wait on his bond. He could wait on his bond, which was posted. Well, that's the whole purpose is that you're supposed to be protecting. You pony up now, and then we'll decide how much I get to keep or what you pony up. Isn't that a part of the calculus? How do you extract that? All these puns in this thing. How do you just remove this from the calculations and say, no, no, no, no, no. We'll just give you the surface here right now. We're going to protect you there. We're not going any deeper. But that's his whole point. Even if you take this, as Judge Thacker aptly pointed out, it's not in the four corners rule 65, but the three puzzles. He's saying that's impacted with coal, too, surface and question. Why is that not in the proper calculus as to posting bonds for relief? Because, Your Honor, we did not take the coal. And I don't believe that it impacted. How do we know you didn't take the coal if we have not had a chance to look at that properly before summary judgment or injunction? That's the question. Because the opportunity to look at that in terms of the properties that we have condemned is at just compensation, and they had an opportunity to present that evidence. As to the 65 parcels that are not part of the condemnation, you're right. The judge properly excluded that. It was not heard, and it shouldn't have been because it wasn't taken. We don't have to post a bond for the things we don't take, Your Honor. If there are more damages than what's covered by the bond at just compensation, the court or the jury will award those damages, and MVP will be responsible for them. Thank you. Thank you, counsel. I appreciate it. Mr. Patterson, you have some time reserved. Obviously, we disagree. Counsel disagrees very much on a great many factual issues, and that should have been heard below. I believe the court is correct that what is being taken has to be in the calculus. Otherwise, the court below— What court? I don't think we've made any decision yet. You are exactly correct. I was speaking with respect to Judge Gregory's question to Ms. Bagnell. He asked, shouldn't that be in the calculus? I think, and clearly it is our position, that yes, it has to be in the calculus. I thought she agreed with me, too. I thought she agreed with me. Not the 65, but the three parcels. Right. Well, on the 65, it has to be in the calculus. Otherwise, a governmental authority has been given to a private— Is there a bond on the three parcels? There is a bond on the surface where they named and said, yes, this is what they're taking. There is no bond on all the property that they dug up and did not identify. There is no bond on the property where the pipeline is. Because they didn't identify it. I don't understand why there's a complaint, and then you want to talk about everything that's not yet in the complaint, or in your complaint. Because it should have been in the complaint. Because we raised that issue. And what is that called? Inverse condemnation? No, it was an opposition to an injunction. It was to come forward. Our evidence was relevant to whether or not the proper amount of consideration had been given to the rights of the parties, and whether the bond that they proposed was adequate. What's your response to her—to opposing counsel's argument that this will come up in the just compensation phase? No, they did not join those parcels, so it will not come up in just compensation. You're not going to bring it up? Not in just compensation. We're going to have to— They didn't buy the parcels. In that, you're not going to bring it up, but you're bringing it up here. So I feel pretty sure you'll bring it up. Well, I am bringing it up right here and saying what should have occurred was the court should have let us hear our evidence, decided what, in fact, they were going to damage, and that injustice occurs if they don't do that, and our constitutional rights are violated. If the question then becomes, well, yes, as to the injunction, they should have heard it. So what happens? Well, the injunction should be set aside. They should not have early entry. They are digging our coal. It's a continuous process. That needs to stop. So the opposing counsel has said basically you're talking about three parcels here. You shouldn't even be party to this because you're talking about 65. They're not even here. But speak to the 2150 acres exception from the perspective that she gave and your interpretation of whether that exception does give you an opportunity to participate in this. I think it clearly gives us an opportunity to participate. You look at the purpose of the project. What is the government doing? What is MVP? Align the case with the facts of this case. Align 2154 exception with the facts here that give you relief under that exception. Well, in 2154, they were building a dam, and the Corps of Engineers said, well, I'm going to take to the high water mark. And they said, well, if I take to the high water mark, this is how much of your property I'm going to take. That was the purpose of the project. Right. The difference between that 610 and 628, they said you're taking much more here. That's right. How does that fit with the exception 50 acres? Well, it's the same thing here. The purpose of this project is an interstate pipeline that goes 303 miles. And what is that pipeline going to take throughout its purpose? We were not permitted to present that evidence, which comes in under 2154, and, therefore, there is error. She admits there was absolutely no offer made for coal. Well, that admission itself should be grounds for denial of reversal of summary judgment because an offer with respect to the property taken is a prerequisite for establishing the right to take. So they did not establish the right to take in the first instance. Clarify something for me. In 2154, I'm thinking about 610 and 628. Are you talking about property that's going like that or it's going down like that? I'm talking about greater property that's occurring here because this water line is much lower, so it's going to take much more. So it's sort of like yours where if you say I'm only taking this, then it's over here? That is exactly the case. What is the purpose? If there's a factual determination with respect to how much property is going to be impacted and taken, then that should come before the jury, and that is what happened. The landowner said, no, you're taking more of my property than you say you are. You're not bound by just a description of a take. You need to look at, in fact, what damage is going to occur here. They had a trial below that came to the Fourth Circuit. The Fourth Circuit reversed the trial court and said you should not have just relied on their description.  You should have heard that evidence, and it is a matter of law as to what is being taken. So while there are factual elements, this court should review that issue de novo because it is a matter of law. I would submit to you that 21.54 acres dictates that error was made below. And I also submit that all the harms weren't balanced because the evidence wasn't heard. I also submit that the taking wasn't appropriate because there is no bond. I have two minutes and 19 seconds that the court would like to inquire. No, it's the reverse. It goes and starts getting higher. That means how much time you've been over. Oh, I apologize. Well, I apologize. That is still increasing. You're doing a take. Thank you, counsel. You need a break. I'm okay. Okay. We're going to come down and greet counsel and proceed to our next case.
judges: Roger L. Gregory, James A. Wynn Jr., Stephanie D. Thacker